IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| LACY BROWN, # 1179549 | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-06-580 |
| | § | |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| DIRECTOR OF TDCJ-CID | § | |

### REPORT AND RECOMMENDATION

Before the Court is the Petition for a Writ of Habeas Corpus of Lacy Brown, a prisoner in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID"). (Instrument No. 1).  Respondent filed a Motion for Summary Judgment with Brief in Support (Instrument No. 12) seeking the dismissal of Petitioner's writ.  Petitioner filed a Reply.  (Instrument No. 14).  Having carefully considered the Petition, the parties' motions and briefs, and the state court records, the Court submits its Report and Recommendation to the District Court.

The Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. §§ 2241 and 2254.  The State has custody of Petitioner pursuant to a judgment and sentence entered by the 122nd Judicial District Court of Galveston County, Texas in Cause No. 02CR1938, on June 18, 2003. Petitioner was indicted for the felony offense of aggravated assault on a public servant, with a prior conviction alleged for purposes of enhancement.  (Clerk's Record ("C.R.") at 2).  Petitioner pled

1

"not guilty" and his case was tried to a jury.[1]  After hearing all the evidence, the jury found

Petitioner guilty of the offense of aggravated assault of Officer Tyson, a public servant (C.R. at 70),

and he was sentenced by the court to twenty (20) years imprisonment.  (C.R. at 71-73).

Petitioner appealed his conviction.  The Eleventh Court of Appeals affirmed his conviction

for the aggravated assault on Officer Tyson on October 28, 2004.  *Brown v. State*, No. 11-03-00253-

CR, 2004 WL 2579009 (Tex. App.–Eastland 2004).[2]  Petitioner filed a Petition for Discretionary

Review ("PDR"), which was refused by the Texas Court of Criminal Appeals ("TCCA") on April

13, 2005.  *Brown v. State*, Applic. No. PD-002-05 (Tex.Crim.App. 2005).

On January 17, 2006,[3] Petitioner filed an application for a state writ of habeas corpus

pursuant to Article 11.07 of the Texas Code of Criminal Procedure.  *Ex parte Brown*, Applic. No.

WR-64,212-01.  The TCCA denied Petitioner's state writ without written order on June 28, 2006.

*Id.* at cover.

Petitioner filed the instant writ on August 29, 2006.  In his Petition, he claims he is entitled

to federal habeas relief based on the following claims: (1) the evidence was legally insufficient to

support his conviction; (2) he received ineffective assistance of counsel at trial; and (3) he received

ineffective assistance of counsel on appeal.  (Fed. Writ Pet. at 7; Pet'r Memo. at 3-4).

---

[1] Petitioner was indicted for aggravated assault of three police officers in Cause Numbers 02CR1938, 02CR1939, 02CR1941, and aggravated assault of a civilian bystander, Jesus Aviles, in Cause Number 02CR1940.  Petitioner was tried to a jury on all of these charges.  The jury found him guilty of aggravated assault on Officer Tyson and the civilian bystander, but acquitted him on the other two charges.  *State v. Brown*, No. 11-03-00253-CR (Tex. App.–Eastland 2004).

[2] The Texas appellate court reversed Petitioner's conviction for aggravated assault against civilian bystander, Jesus Aviles, in Cause Number 02CR1940.

[3] The mailbox rule does not apply to the filing of state habeas applications in Texas.  *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999).

2

*Insufficiency of Evidence Claim*

Petitioner claims that the evidence was legally insufficient to support his conviction for aggravated assault against Officer Tyson. (Fed. Writ Pet. at 7; Pet'r Memo. at 5-9).  In particular, he alleges "[t]he element of intent to assault Officer Tyson, or the knowledge of the risk of an assault, seems to be assumed, rather than proven." (Pet'r Memo. at 7).  Petitioner alleges that his "state of inebriation and the distractions within his vehicle have <u>not</u> been considered" and that, while his actions might be sufficient for a finding of recklessness, it is "<u>not</u> sufficient to establish the statutory requirement of intent or knowledge." (*Id.*)  Petitioner also claims that the evidence was not sufficient to establish that Officer Tyson was performing a duty, namely traffic duty, at the time of the alleged incident and that Officer Tyson had "no justification" for attempting to stop his vehicle at that time.  (Pet'r Memo. at 9).

The Fourteenth Amendment's guarantee of due process provides that no criminal defendant may be convicted and punished except upon proof sufficient to persuade a rational fact-finder of the defendant's guilt beyond a reasonable doubt.  *Tibbs v. Florida*, 457 U.S. 31, 45 (1982).  In determining a claim for legal insufficiency, a federal habeas court decides whether "in the light most favorable to the prosecution, any rational trier of fact could have found the existence of facts necessary" for the crime's essential elements.  *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).  All credibility choices must be construed in favor of the verdict.  *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999).

Under Texas law a person commits the offense of assault if the person intentionally or knowingly threatens another with imminent bodily injury.  Tex. Penal Code § 22.01(a)(2).  A person commits the offense of aggravated assault if the person uses or exhibits a deadly weapon during the

commission of an assault. Tex. Penal Code § 22.02(a)(2).  Aggravated assault is a felony of the first

degree if the offense is committed against a person the actor knows is a public servant while the

public servant is lawfully discharging an official duty. Tex. Penal Code § 22.02(b)(2).

To prove aggravated assault on Officer Tyson, the State needed to show Petitioner

intentionally and knowingly threatened Officer Tyson, a public servant, with imminent bodily injury

and used or exhibited his vehicle as a deadly weapon.  *See* Tex. Penal Code, §§ 22.01(a)(2),

22.02(a)(2).  The jury could infer knowledge and intent from Petitioner's acts or conduct and from

the surrounding circumstances. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex.Crim.App. 1991).

The jury could also infer Petitioner's threatening conduct from his actions or deeds. *See Olivas v.

State*, 203 S.W.3d 341, 347  (Tex.Crim.App. 2006); *McGowan v. State*, 664 S.W.2d 355, 357

(Tex.Crim.App. 1984).

The evidence in this case clearly satisfied the due process test of *Jackson*.  The jury heard

testimony that on the night of August 31, 2002, a dispute arose between the Petitioner and his then

wife, Kimberly Duchane, over whether they would return home that night after visiting Duchane's

aunt in La Marque, Texas.  (Trial Transcript ("T.T."), Vol. 3 at 35:1-11).  Duchane testified that

Petitioner assaulted her and then forced her and her daughter into their car.  (T.T., Vol. 3 at 35:18;

36:3-7).  She testified that police arrived and, although inside the car and upset after being assaulted,

she heard the officer instruct Petitioner to stop and get out of the car, but he refused to do so and

proceeded to drive away.  (T.T., Vol. 3 at 36:8-18; 37:1-2; 37:12-15; 46:7-14).  Officer Craven also

testified and explained that when he arrived, in uniform and in a clearly marked patrol unit, he told

Petitioner to stop the car, but Petitioner did not stop and proceeded to drive away.  (T.T., Vol. 3 at

62:18-21; 64:13-25).  Officer Cravens, along with another officer in his own patrol unit, then

4

activated their emergency lights and proceeded to follow Petitioner's vehicle through the streets of

La Marque in an attempt to get him to stop.  (T.T., Vol. 3 at 66:3-10; 67:4-6; 67:20-21).  As he

followed Petitioner's vehicle, Officer Craven testified that, "at one point before [Petitioner] got to

the intersection of Lake Road, [Officer Craven] observed [Petitioner's] vehicle veer left and it was

seconds after that that Officer  Tyson came on the radio and gave us some traffic which explained

the veering off."  (T.T., Vol. 3 at 66:13-19).

The jury also heard testimony from Officer Tyson.  Officer Tyson testified that he first got

involved in the incident by being one of the officers who responded to a call concerning a possible

threat or disturbance.  (T.T., Vol. 3 at 121:1-10).  He explained to the jury that Petitioner instigated

the chase in his attempt to evade officers who were trying to stop him to question him about the call

(T.T., Vol. 3 at 174:14-18) and that Petitioner had two patrol units behind him with their emergency

lights on.  (T.T., Vol. 3 at 131:12-16).  Officer Tyson explained that when he was trying to stop the

Petitioner's car he was within his lawful duties as a police officer.  (T.T., Vol. 3 at 131:1-4).  He

further explained that he was in police uniform and in a  patrol unit that was clearly marked as a

police vehicle.  (T.T., Vol. 3 at 121:22-25; 122:1-9).  He described to the jury that he positioned his

patrol unit "well in both lanes of traffic" to block the roadway, and so that the reflective tape on the

unit, which clearly marked it as a police vehicle, would be visible to the oncoming driver.  (T.T.,

Vol. 3 at 122:12-14; 123:13-16).  After positioning his vehicle, Officer Tyson described how he got

out and was initially standing by the driver's side door so that he could still monitor the radio and

look down the street.  (T.T., Vol. 3 at 124:6-9).  Officer Tyson then stated that he stepped out of his

position by the door and was "just about even with the front portion of the bumper of [his] patrol

unit" (T.T., Vol. 3 at 126:10-13) when, using his hands, he motioned for Petitioner to slow down and

stop the vehicle.  (T.T., Vol. 3 at 127:14-23; 128:11-17).  Officer Tyson testified that, "[b]ased on his professional opinion on this as far as running lots of radar," as the vehicle approached it was "definitely traveling faster than the speed limit allotted for that area" (T.T., Vol. 3 at 125:6-11) and, instead of slowing down, the driver was "steadily accelerating." (T.T., Vol. 3 at 125:12-16).  Officer Tyson testified that the driver of the vehicle then swerved toward him (T.T., Vol. 3 at 128:25; 129:1-6; 129:21-24; 164:11-17), forcing him to "jump out of the way and use [his] patrol unit as a shield" so that he would not be hit and injured by the car.  (T.T., Vol. 3 at 130:1-8; 174:2-3).

Based on the testimony of Officer Tyson, coupled with the testimony of Duchane and Officer Craven,  a rational jury could have found sufficient evidence existed to establish all the elements of the offense (*i.e.*, that Petitioner knowingly or intentionally threatened Officer Tyson with imminent bodily injury, using his car as the deadly weapon, while Officer Tyson was lawfully discharging an official duty) beyond a reasonable doubt.

The Court also observes that Petitioner raised the issue of sufficiency of the evidence on direct appeal and this claim was found to be without merit by the court of appeals. *Brown v. State*, Nos. 11-03-00253, 00254-CR, 2004 WL 2579009 (Tex.App.–Eastland 2004, pet. ref'd).  Petitioner has not shown, nor does this Court find, that the state court's judgment in this matter involved an unreasonable application of federal law or was unreasonable in light of the evidence and, for this reason too, federal habeas relief is not warranted.

The Court **RECOMMENDS** that the Respondent's Motion be **GRANTED** on this point.

*Ineffective Assistance of Trial Counsel Claim*

Petitioner contends that he received ineffective assistance by counsel at trial due to numerous

errors by counsel.  In particular he claims that his attorney (1) failed to adequately challenge the proof offered by the State concerning the requisite level of intent necessary for the offense and should have "guided the jury through the process so they would understand that the State" had not met their burden of proof (Pet'r Memo. at 12); (2) inadequately pursued the inconsistencies between the testimony of the police officers concerning the incident; (3) failed to present any evidence on his behalf that might counter the State's claims (Fed. Writ Pet. at 7; Pet'r Memo. at 10-14); and (4) refused "to let [Petitioner] testify at the guilt/innocence [phase] because of anticipated harm from the revelation of [his] prior offenses and convictions." (Pet'r Memo. at 11).  Petitioner contends that his acquittal "should have been unavoidable" had counsel's performance not been deficient by essentially providing him with no defense.  (*Id*. at 12).

The Sixth Amendment to the Constitution provides criminal defendants a right to effective assistance of counsel.  U.S. CONST., Amend. VI.  It does not, however, guarantee a criminal defendant "errorless representation."  *Moreno v. Estelle*, 717 F.2d 171, 176 (5th Cir. 1983).  To successfully state a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A petitioner's failure to establish either prong of Strickland necessarily requires a finding that counsel's performance was constitutionally effective.  *Id.* at 687.

When determining whether counsel's performance was deficient, courts will "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Id.* at 689; *see also, Wilkerson v. Collins*, 950 F.2d 1054, 1064 (5th Cir. 1992) (a reviewing court must be highly deferential to the trial attorney's conduct and presume that assistance was reasonably

effective).  A petitioner must also overcome the presumption that the "challenged action 'might be considered sound trial strategy.'" *Wilkerson*, 950 F.2d at 1064 (*quoting Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997) (*quoting Garland v. Magio*, 717 F.2d 199, 206 (5th Cir. 1983) (on rehearing)); *see also*, *Moreno*, 717 F.2d at 177 (counsel will not be deemed ineffective for failing to advance a defensive theory when his decision was a reasonable strategic choice based upon a "professional assessment of the plausibility of the defense and its likelihood of success at trial").  Therefore, when making that determination, the court must examine the proceedings as a whole, giving due consideration to the weight of the evidence supporting the verdict and evaluating the alleged failings of counsel in that total setting.  *Strickland*, 466 U.S. at 690 (an ineffective claim is judged not by isolating a portion of counsel's representation, but on the totality of the representation).

The second prong of the test requires a petitioner to show prejudice.  To establish prejudice, a petitioner must establish that "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  A "reasonable probability" means a probability sufficient to undermine the confidence in the outcome.  *Id*.  A petitioner must "affirmatively prove prejudice."  *Id.* at 693.  A petitioner cannot satisfy the second prong of *Strickland* with mere speculation and conjecture.  *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).  Nor can a petitioner rely on conclusory allegations to satisfy this prong.  *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

Finally, when there has been an adjudication on the merits in state court, as there has been here, the state court's ruling is entitled to deference under § 2254(d) and a federal court may not grant habeas relief unless it decides that the state court's application of the *Strickland* standard was "objectively unreasonable." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 409-10 (2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341-42 (2003) (state factual determinations will not be overturned unless they are objectively unreasonable in light of the evidence). In making this determination, a federal court's focus is on the state court's ultimate legal conclusion, not its reasoning. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

Petitioner first claims that counsel did not adequately challenge the proof offered by the State as to the requisite element of intent or knowledge and failed to adequately explain the State's failure to the jury. Contrary to his contentions, however, defense counsel's performance was not deficient. As previously discussed, the evidence presented by the State was legally sufficient to support his conviction. Furthermore, Petitioner's claim that counsel did not challenge the evidence presented by the State or adequately argue to the jury that the evidence presented did not satisfy the requisite elements to support a conviction for aggravated assault on a public servant is simply not supported by the record. Instead, the record clearly reflects that defense counsel made these arguments to the jury in his closing argument and, while successful in obtaining an acquittal on the charges against two of the officers, was unsuccessful in this argument as it applied to Officer Tyson. The Court also concludes that Petitioner's contentions, no more than conclusory in nature, are insufficient to establish prejudice as required by *Strickland*. *Schlang*, 691 F.2d at 799.

Petitioner's next claim, which the Court observes is somewhat similar to his first, is that counsel did not adequately challenge the State's evidence by cross-examination of the witnesses and

9

that he failed to adequately point out to the jurors all the inconsistencies.  The Court, having carefully reviewed the entire trial transcript, finds no merit in Petitioner's contentions.  Instead, the Court finds that defense counsel carefully examined every witness and, in doing so, was able to bring out a number of inconsistencies in the witnesses' testimony.  A review of counsel's closing statement  reflects that these inconsistencies were also argued by defense counsel to the jury.  The mere fact that the jury chose to credit the State's witnesses does not establish counsel's performance was deficient.  Petitioner's claim is also without merit because he has failed to establish prejudice.

Petitioner next alleges that counsel failed to present any evidence on his behalf.  Petitioner fails to explain what evidence defense counsel should have presented on his behalf.  To prevail on a claim that defense counsel was ineffective for failing to call witnesses, a petitioner must establish that a specific witness was willing and able to testify and what they would have testified to had they been called.  *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).  Here, Petitioner makes no attempt at any such showing.  Instead he attempts to rest his contention on bald allegations, which is not sufficient to establish ineffective assistance of counsel.

Finally, Petitioner alleges that counsel refused to let him testify on his own behalf.  The record before this Court, however, does not support Petitioner's conclusory statement.  Instead, the trial transcript reveals that during the hearing to determine the admissibility of Petitioner's prior felony offense, defense counsel stated on the record:

> Ms. Carpenter: Yes, the State's going to rest first thing this morning.
>
> Mr. Russell:  Now we're at the point where I have to make a decision – actually I guess Mr. Brown has to make a decision on whether to testify in this case.  We had that prior motion on testifying free from

> impeachment.  The only impeachment would be that burglary of a
> motor vehicle that occurred back in – I believe it was almost eight
> years ago and we were going to revisit that at this time.

(T.T., Vol. 4 at 3:6-16).  As the hearing progressed, defense counsel also expressed to the trial court

the following:

> Mr. Russell:  *   *   *   The importance of the Defendant's testimony
> in this type of case when you have – we've had, I think, three or four
> officers testify.  You know, I need for him to testify.  So the
> importance of his testimony is extremely important.

(T.T., Vol. 4 at 6:19-23).  The trial court, however, determined that Petitioner's prior felony offense

would be admissible for purposes of impeachment.  (T.T., Vol. 4 at 19:12-25).  Following the trial

court's ruling, defense counsel requested and was afforded a recess so that he could confer with

Petitioner.  (T.T. Vol. 4 at 20:14-16).  Following the brief recess, the record reflects that defense

rested without testimony from Petitioner.  (T.T. Vol. 4 at 21:17-18).  The record does not reflect that

the decision not to testify was anything other than Petitioner's decision.

Moreover, consistent with the record, is the sworn statement from counsel in response to

Petitioner's claim of ineffective assistance of counsel presented in his state writ of habeas corpus.

In the affidavit defense counsel, Greg Russell, stated:

> I advised Mr. Lacy Brown that in my opinion I didn't think he should
> testify at the guilt/innocence phase of his trial, [sic] due to his
> impeachable convictions for Retaliation and Burglary of a Motor
> Vehicle.  I always tell my clients that it is ultimately their choice as
> to whether they testify or not and I simply give them my advice.  I
> have never in my life told a client that he cannot testify or "refused"
> to allow him to testify if that is his desire. I have no knowledge of a
> sleeping juror.  I diligently cross-examined every officer and pointed
> out discrepancies in their testimony.

*Ex parte Brown*, Applic. No. WR64,212-01 at 59.

The Court also observes that, while Petitioner now argues his attorney prevented him from testifying although he wanted to do so, he was heard on appeal to claim that the trial court's error in admitting evidence of a prior conviction of burglary of a vehicle was what prevented him from testifying at the guilt/innocence phase stage of his trial because, if he testified, he would have "exposed [himself] to a damaging disclosure." *See Brown v. State*, 2004 WL 2579009 at *4.

In conclusion, this Court finds that Petitioner's has failed to establish that counsel's performance was constitutionally deficient. Moreover, while he makes conclusory statements that had counsel's performance not been deficient, he would have been acquitted, this is nothing more than speculation, which is clearly insufficient to establish prejudice. Finally, since Petitioner has not established, and the Court does not find, that the state court's application of *Strickland* was objectively unreasonable, federal habeas relief on this issues is not warranted.

The Court **RECOMMENDS** that the Respondent's Motion be **GRANTED** on this point.

*Ineffective Assistance of Appellate Counsel Claim*

Petitioner claims he received ineffective assistance from counsel on appeal because counsel failed to present the issue regarding the absence of proof as to intent or knowledge on appeal. (Fed. Writ Pet. at 7; Pet'r Memo. at 14-15). Petitioner contends that appellate counsel successfully asserted this challenge in his other conviction for aggravated assault against Jesus Aviles, and he "cannot see why the same argument was not applied to the alleged assault against Officer Tyson." (Pet'r Memo. at 14). Petitioner alleges that the success of this challenge in his other conviction "shows the harm done by the oversight in the argument for the instant case." (Fed. Writ Pet. at 7).

In order to establish a claim for ineffective assistance of appellate counsel, Petitioner must establish that counsel's performance fell below an objective standard of reasonableness and that he

12

was prejudiced by it. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (applying standard set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). In doing so, he has the burden of overcoming the strong presumption that counsel's performance was effective. Appellate counsel is not required to raise baseless or unwarranted issues on appeal. *See id.* at 278. Furthermore, a petitioner has no constitutional right "to compel appointed counsel to press non-frivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Here, appellate counsel presented four grounds of error on appeal. One of the grounds presented was that the evidence introduced at trial was insufficient to support the conviction of aggravated assault on civilian bystander Aviles because there was no testimony that established that Petitioner intentionally or knowingly threatened Aviles with bodily injury. Petitioner contends that appellate counsel should have asserted this same argument to his conviction for aggravated assault on Officer Tyson. Initially, the Court observes that it cannot, with the benefit of hindsight, conclude counsel rendered ineffective assistance (*Strickland*, 466 U.S. at 689), yet this is precisely what Petitioner asks this Court to do. In his Memorandum, Petitioner concedes that "it is admittedly by hindsight that one sees the possibility that such an argument might have been effective," nevertheless, he claims that it would have been a "simple matter to point out the statutory deficiency of the proof in relation to [Officer] Tyson, just at it was done with Aviles." (Pet'r Memo. at 15).

Notwithstanding this point, appellate counsel cannot be considered deficient for failing to raise issues on appeal that counsel believes, in his professional judgment, are without merit. *Smith v. Robbins*, 528 U.S. at 278; *Mendiola v. Estelle*, 635 F.2d 487, 491 (5th Cir. 1981). Based on the evidence presented to the jury in this case, it is exceedingly possible that appellate counsel did not

13

present this issue because it lacked merit.  However, setting aside any such speculation, even to the

extent that counsel had raised this issue on appeal, Petitioner's contention that it too would also have

been successful in gaining him acquittal is nothing more than speculation and such conclusory

statements are insufficient to support this claim.  *Schlang v. Heard*, 691 F.2d at 799.  In fact,

contrary to Petitioner's contentions, had any such issue been presented it would not have been

successful.  Specifically, in appellate court's opinion, the court incidentally addressed this issue

when it clarified in its opinion the difference between the sufficiency of evidence that the conviction

of aggravated assault as to Officer Tyson compared to the evidence concerning the conviction for

aggravated assault of the civilian bystander Aviles.  The court explained:

> [t]he state produced sufficient circumstantial evidence that
> [Petitioner] either intended to threaten Officer Tyson with imminent
> bodily injury or was reasonably certain that he would threaten him
> with imminent bodily injury.  In fact, Officer Tyson testified that
> [Petitioner] drove his vehicle directly at him while he was standing
> outside his patrol car, forcing Officer Tyson to have to jump out of
> the way to avoid being hit.  *There is no similar testimony from Aviles
> or from any other witness who saw [Petitioner] hit Aviles's [sic]
> vehicle.*

[Emphasis added].  *Brown v. State*, 2004 WL 2579009 at *3.

Petitioner's allegation that he received ineffective assistance from his appellate counsel is

simply without basis.  Having failed to establish that counsel's performance was deficient or

prejudice, the Court concludes that Petitioner's claim is without merit and must be dismissed.

The Court **RECOMMENDS** that the Respondent's Motion be **GRANTED** on this issue.

## CONCLUSION

For all the foregoing reasons, it is the **RECOMMENDATION** of this Court that

Respondent's Motion for Summary Judgment (Instrument No. 12) be **GRANTED** and Petition for

a Writ of Habeas Corpus of Lacy Brown(Instrument No. 1) be **DISMISSED**.

The Clerk **SHALL** send copies of this Report and Recommendation to the Parties.  The Parties **SHALL** have until **May 30, 2007**, to have written objections, filed pursuant to 28 U.S.C. § 636(b)(1)(C), **physically on file** in the Office of the Clerk.  The Objections **SHALL** be electronically filed and/or mailed to the Clerk's Office at P.O. Drawer 2300, Galveston, Texas 77553.  **Any Objections filed SHALL be contained in a written document specifically entitled "Objections to the Report and Recommendation of the Magistrate Judge"**, which will then be forwarded to the District Judge for consideration.   Failure to file written objections within the prescribed time **SHALL** bar the aggrieved party from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas this _____10th_____ day of May, 2007.

_____
John R. Froeschner
United States Magistrate Judge